

> Signed/Docketed
> January 9, 2009

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO
### The Honorable Michael E. Romero

| | |
|---|---|
| In re: ) | |
| ) | Case No. 08-14280 MER |
| THOMAS LEONARD SEGURA, JR. ) | |
| MARLENE CHRISTINA SEGURA ) | Chapter 13 |
| ) | |
| Debtors. ) | |

## ORDER

THIS MATTER comes before the Court on the Debtors' Third Amended Chapter 13 Plan and the objection thereto filed by Chase Home Financial, LLC. The Court has considered the evidence and legal arguments presented by the parties, and hereby makes the following findings of fact and conclusions of law.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b)(1). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (L) as it concerns the administration of the bankruptcy estate and the confirmation of a Chapter 13 plan.

## BACKGROUND FACTS

The Debtors, Thomas and Marlene Segura (the "Seguras" or the "Debtors") filed their voluntary Chapter 13 petition on April 2, 2008. On June 11, 2008, the Debtors filed their Third Amended Chapter 13 Plan (the "Plan"), to which Chase Home Financial, LLC ("Chase") filed its objection.

Chase does not dispute the Plan provides for the secured claim and arrearages reflected in its filed proof of claim. However, Chase objects to language in the Plan it contends impermissibly

modifies its lien in violation of 11 U.S.C. § 1322(b)(2) and (5).[1]  Specifically, Chase objects to Sections V(G)(10) and (11)[2] and Section VI[3] of the Plan.

## DISCUSSION

The underlying question before the court is whether the Debtors' Plan as presently constituted may be confirmed.  Therefore, the Court must determine whether the Plan meets the confirmation requirements set forth in the Bankruptcy Code.  This involves analysis of two Code

---

[1]  Unless otherwise specified, all future statutory references in the text are to title 11 of the United States Code.

[2]  Plan sections V(G) (10) and (11) provide:

**(10) Creditors Seeking Fees for Legal Services, Servicing Fees, or Similar Fees and Charges**:  If you seek fees for services performed after the filing of the case, you must apply to the court for approval of said fees.

**(11) Compliance with Section 524(i)**:  Confirmation of the plan shall impose a duty on the holders and/or servicers of claims secured by liens on real property to apply the payments received from the trustee on the prepetition arrearages, if any, only to such arrearages; to deem the prepetition arrearages as contractually cured by confirmation; to apply the direct mortgage payments, if any, paid by the trustee or by the debtor(s) to the month in which they were made under the plan or directly by the debtor(s), whether such payments are immediately applied to the loan or placed into some type of suspense account; to notify the trustee, the debtor(s) and the attorney for the debtor(s) of any changes in the interest rate for an adjustable rate mortgage and the effective date of the adjustment; to notify the trustee, the debtor(s) and the attorney for the debtor(s) of any change in the taxes and insurance that would either increase or reduce the escrow portion of the monthly mortgage payment; and otherwise to comply with 11 U.S.C. Section 524(i).

[3]  Section VI of the Plan states:

All property of the estate shall vest in the debtor at the time of confirmation of this Plan.  NOT APPLICABLE

The following is substituted for the above provision: By operation of 11 U.S.C. § 1327 all property of the estate shall vest in the debtor at the time of confirmation unless otherwise noted below: Earnings from services performed by the debtor after the commencement of the case, but before the case is closed, dismissed, or converted as provided in Section 1306(a)(2).

sections, §§ 1322 and 1325. Section 1322(b)[4] sets forth what a Chapter 13 plan may contain and §1325(a)[5] lists criteria which, if met, shall result in the Court confirming a proposed plan.

Chase's objections to the Plan language fall into five general categories. First, Chase argues Section V(G)(11)'s requirement to apply direct mortgage payments to the month in which they were made impermissibly modifies its deed of trust, and places an unwarranted burden on Chase to change its accounting system. Second, Chase asserts deeming the mortgage

---

[4] For purposes of the objections raised by Chase, the pertinent portion of § 1322 is as follows:

(b) Subject to subsections (a) and (c) of this section, the plan may–
. . . .
(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;
. . . .
(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due. . . .

11 U.S.C. § 1322(b).

[5] Similarly, for purposes of the issues before the Court, the relevant provisions of § 1325 are:

(a) Except as provided in subsection (b), the court shall confirm a plan if–
    (1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;
. . .
    (5) with respect to each allowed secured claim provided for by the plan–
        (A) the holder of such claim has accepted the plan;
        (B)    (i) the plan provides that–
                (I) the holder of such claim retain the lien securing such claim until the earlier of–
                      (aa) the payment of the underlying debt determined under nonbankruptcy law; or
                      (bb) discharge under section 1328; and
                (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
            (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim. . .

11 U.S.C. § 1325(a). Section 1325(b) contains further requirements for confirmation that must be met if the Chapter 13 Trustee or the holder of an allowed unsecured claim objects to confirmation. Since Chase, the objector in this instance, is neither the Trustee nor the holder of an allowed unsecured claim, § 1325(b) does not apply to the case at bar.

Page 3 of 12

"contractually current" upon confirmation also creates an improper modification of the deed of trust. Third, Chase states it should not be required to seek approval of its post-petition fees, including legal fees, because such fees are provided for in the deed of trust, and because any questions as to the reasonableness of such fees are contract matters to be resolved either in the state court or by this Court should the issue arise. Fourth, Chase contends requiring it to notify the Debtors and the Debtors' attorney of changes to the interest rate or to the escrow amount would impose an unfair burden, while relieving the Debtors of any duty to inquire as to the status of their loan. Finally, Chase maintains the provision vesting the Debtors' post-petition earnings in the Estate rather than in the Debtors is inconsistent with the purposes of Chapter 13, and could prevent Chase from collecting legitimate post-petition debts.

In response, the Debtors assert the language of the Plan is intended to preserve their "fresh start" and to address the problem that mortgage lenders often treat timely payments received post bankruptcy as if they were late, because the mortgage lending industry traditionally has credited payments received to the oldest outstanding installment due. They contend this leads to unauthorized fees and interest charges, as well as legal fees charged to the Debtor without bankruptcy court oversight. In addition, they argue the disputed language is necessary to protect them from emerging from bankruptcy with a previously undisclosed potential liability to chase for thousands of dollars instead of a fresh start.[6] The Court will address each of the disputed provisions in turn.

**A.    Application of Post-Petition Plan Payments and Mortgage Payments.**

A Chapter 13 plan cannot modify the rights of the holder of a security interest in a debtor's primary residence, 11 U.S.C. § 1322(b)(2), as generally such rights arise from mortgage instruments which are enforceable under state law. *In re Watson*, 384 B.R. 697, 704 (Bankr. D. Del.2008). However, § 1322(b)(5) allows for the curing of a prepetition arrearage on a mortgage debt. 11 U.S.C. § 1322(b)(5); *Payne v. Mortgage Electronic Registration Systems (In re Payne)*, 387 B.R. 614, 632 (Bankr. D. Kan. 2008). The purpose of the cure provision is to return the debtor to a non-default posture. *See* H.R. Rep. No. 835, 103d Cong., 2d Sess. 55 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340 ("It is the committee's intention that a cure pursuant to a plan should operate to put the debtor in the same position as if the default had never occurred."). The pre-bankruptcy arrearages are typically paid under a proposed plan as part of the mortgage

---

[6] Many of the Debtors' arguments are taken from John Rao, *A Fresh Look at Curing Mortgage Defaults in Chapter 13*, 27 Am. Bankr.Inst. J. 14 (Feb. 2008), cited in the Debtors' brief and in oral argument. See also, Hon. Keith M. Lundin, 2 Chapter 13 Bankruptcy § 131.1 (3rd ed. 2000 & Supp. 2004) (footnote omitted):

> [p]ostconfirmation late charges, escrow account shortfalls, force-written insurance premiums and other contract charges that accrue under a mortgage during a Chapter 13 case don't go away at discharge. When the debtor gets a notice of foreclosure almost simultaneously with the discharge, counsel has a tough task to explain why the years of hard work in the Chapter 13 case did not produce the advertised relief.

creditor's allowed claim. *See Rake v. Wade*, 508 U.S. 464, 473 (1993) (Section 1322(b)(5) causes a mortgage creditor's claim to "split . . . into two separate claims - the underlying debt and the arrearages"). In this District, post-bankruptcy payments are normally paid by the debtor to the mortgage creditor "outside the plan."

Both parties recognize confusion can arise post-confirmation from this two pronged payment mechanism. The Plan's disputed language requires Chase to apply the payments received from the trustee only to prepetition arrearages, and to apply direct <u>post-petition</u> mortgage payments to the month in which they were made, "whether such payments are immediately applied to the loan or placed into some type of suspense account. . . ." *Plan*, Section V(G)(11) (emphasis added). It is unclear exactly to what Chase is objecting on this issue. If it is arguing it should be allowed to apply post-confirmation "outside the plan" payments to pre-bankruptcy arrearages, the Court disagrees.

In this Court's view, requiring a lender to apply post-petition mortgage payments and cure payments differently does not impermissibly modify the lender's contractual relationship with a debtor. Although Chapter 13 debtors may not modify rights of holders of claims secured only by security interest in real property encumbering debtor's principal residence except to cure any default under § 1322(b), as noted above, a plan may, under § 1322(b)(5), cure a pre-petition default on mortgage debt while the debtor maintains current payments. *See Payne*, 387 B.R. at 632, *In re Good*, 207 B.R. 686 (Bankr. D. Idaho 1997). Thus, a provision that a lender must credit cure payments to pre-petition arrearages and post-petition mortgage payments to post-petition obligations merely fulfills the limited modification allowed by § 1322(b)(5). This is consistent with the views of other sister courts addressing this issue. *See, In re Burrell*, 346 B.R. 561, 571 (1st Cir. BAP 2006); *In re Anderson*, 382 B.R. 496, 503 (Bankr. D. Or. 2008); *In re Wines*, 239 B.R. 703, 707 (Bankr. D. N.J. 1999).

However, the Debtors' intent herein appears to be that even if post-petition payments are applied to post-petition obligations, these post-petition payments must be accounted for as if the account was current post-petition, even if it is not. This is a different requirement than the mandate to apply cure payments to arrearages and post-petition payments to post-petition amounts due. As the *Anderson* Court noted:

> If Debtors fall behind in their post-petition maintenance payments, the plan appears to force the home lenders to account for these late payments as current. This would modify their rights in contravention of §1322(b)(2).

*Anderson*, 382 B.R at 503. This Court agrees with the reasoning in *Anderson*, and therefore finds the above-cited provision impermissibly modifies Chase's contract rights and prevents confirmation of the Plan.

**B.    Deeming Mortgage "Contractually Current" Upon Confirmation.**

In a recent case on the subject, *In re Collins*, 2007 WL 2116416 (Bankr.E.D.Tenn. July 9, 2007), Judge Richard Stair, Jr. observed:

> [A] provision requiring [the creditor] to 'deem' the prepetition arrearage amounts contractually 'current' as of confirmation is merely procedural and requires only that [the creditor] update its accounting procedures to ensure that the Debtors' account is not subject to any additional charges associated with any prepetition default.

*Id.*, at *14; *see also In re Emery*, 387 B.R. 721, 725 (Bankr. D. Ky. 2008) (requiring lender to deem the mortgage current upon confirmation did not violate the antimodification provisions of Chapter 13). This Court disagrees with *Collins* that such language is "merely procedural." Rather, this Court agrees with Judge Sidney B. Brooks of this Court when he addressed this issue:

> Debtor is requesting a modification of Creditor's lien rights. The loan can only be determined to be "contractually current" after, but not before, all prepetition arrearages have been paid as provided through Debtor's Fourth Amended Chapter 13 Plan. To deem a loan contractually current upon confirmation without qualifying language is premature and inconsistent with the Bankruptcy Code.

*In re Hudak*, 2008 WL 4850196, at *4 (Bankr. D. Colo. October 24, 2008) (slip copy).

Following confirmation, a Chapter 13 plan "is treated as the exclusive and transcendent relationship between the debtor and the creditor." *Salt Creek Valley Bank v. Wellman (In re Wellman)*, 322 B.R. 298, 301 (6th Cir. BAP 2004). For this reason, the anti-modification provisions of § 1322 should not be taken lightly, nor the provisions of specific contracts be changed to address general policy problems. For these reasons, the Court finds the language of Section (V)(G)(11) requiring Chase to deem the prepetition arrearages as contractually cured by confirmation violates the provisions of § 1322, preventing confirmation of the Plan as it stands.

**C.    Requiring Creditor To Seek Court Approval of Legal Fees.**

The Court is aware of the difficulties presented to debtors when the operating procedures of mortgage lenders, developed outside the bankruptcy context, result in the assessment of unnecessary or unreasonable fees and charges which may jeopardize the benefits intended for debtors under the Bankruptcy Code. Indeed, the Court agrees with the statement of the Bankruptcy Court for the Southern District of Texas: "Section 1322(b)(2) gives the holders of secured homestead interests considerable protection, but it does not give them *carte blanche* to charge any fees that follow the letter of the contract." *In re Sanchez*, 372 B.R. 289, 305 (Bankr. S.D. Tex. 2007). Indeed, the Deed of Trust itself indicates Chase may assess "reasonable" fees

and charges in the event of the Seguras' failure to perform.[7] *Exhibit 9*, Chase Home Finance, LLC's Table of Authorities, Deed of Trust (hereinafter "Deed of Trust"), ¶ 9.

However, the "fee application" structure envisioned by the Seguras' Plan does not adequately address this problem. Attorneys or other professionals employed by creditors are not employed under § 327. Therefore, their fees are not governed by § 330 or the Bankruptcy Rules. In addition, FED. R. BANKR. P. 2016(a) does not apply to fees sought from the Debtors after completion of a Chapter 13 plan. It applies to fees sought "from the estate." Further, fees and charges incurred post confirmation in connection with a mortgage loan are not governed by § 506(b),[8] which "applies only from the date of filing through the confirmation date." *Rake v. Wade*, 508 U.S. at 468.

However, while post-confirmation charges in a Chapter 13 case are not subject to § 506(b) of the Code (*Rake v. Wade*, 508 U.S. at 468) the bankruptcy court retains post-confirmation jurisdiction over a Chapter 13 case. *Jones v. Wells Fargo Home Mortgage (In re Jones)*, 366 B.R. 584, 595 (Bankr. E.D. La. 2007). In addition, a bankruptcy court has "the authority to determine whether post-confirmation fees and charges are reasonable." *Sanchez*, 372 B.R. at 306 . A recent decision by the Bankruptcy Court for the Northern District of Iowa provides a simple and appropriate answer to this issue, stating:

> The Court has the jurisdiction and authority to determine the reasonableness of the Bank's postconfirmation fees and charges. However, such a review is appropriate only after an actual controversy exists. Interim oversight is more appropriately the function of the Chapter 13 Trustee. Court oversight is not required under the Code and is unnecessary when a determination can be made after controversy arises. If a dispute arises after Debtors receive notice of postconfirmation charges, they may file a motion seeking Court review of the disputed charges.

*In re Aldrich*, 2008 WL 4185989, *4 (Bankr. N.D. Iowa September 4, 2008) (slip copy).

---

[7] Paragraph 9 of the Deed of Trust provides if the Seguras fail to perform, Chase "may do and pay whatever is reasonable or appropriate to protect [Chase's] interest. . . ." Deed of Trust, ¶9. Oddly, the Deed of Trust also contains a somewhat repetitive or "overlapping" provision stating Chase may charge fees for services in connection with a default. Deed of Trust, ¶13. This latter provision, in addition to lacking the specificity of the "reasonable and appropriate language of Paragraph 9, also appears to be an attempt to obtain the "*carte blanche*" disapproved by the *Sanchez* Court.

[8] Section 506(b) provides:

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

The Plan language in the case at bar creates a duty on the part of Chase to apply for post-petition fees and costs, which may impose a hardship on Chase, and would certainly impose an administrative burden on the Court and the Chapter 13 Trustee. Acceptance of such a "preemptive strike" against unreasonable fees and costs could easily double or triple the number of fee applications the Court and the Trustee are required to review, using time and resources essentially to provide advisory rulings on the reasonableness of fees and costs. Unless such fees and costs are paid from the bankruptcy estate, or unless they are disputed by the debtor, the Court believes the Plan mandates unnecessary and burdensome requirements. The Court believes the Debtors are attempting to "swat a fly with a sledgehammer" in response to the acknowledged problem of the charging of unreasonable post-confirmation fees by lenders. For these reasons, the Court finds the language at issue prevents confirmation of the Debtors' Plan.

**D.      Requiring Creditor To Inform Debtors of Changes.**

Although the Court agrees with Chase's assertions about some of the other language of the Seguras' Plan, it is difficult to see how Chase is unduly burdened by the requirement "to notify the trustee, the debtor(s) and the attorney for the debtor(s) of any change in the taxes and insurance that would either increase or reduce the escrow portion of the monthly mortgage payment; and otherwise to comply with 11 U.S.C. § 524(i)."[9] *Plan*, Section (V)(G)(11).[10]

A recent decision by the Bankruptcy Court for the District of Kansas provides helpful guidance regarding this issue:

> Unnoticed post-petition charges can derail a debtor's Chapter 13 plan and keep a successful debtor from achieving the ultimate bankruptcy goal-a fresh start. Debtors must be advised when post-petition charges are being assessed against their account so they can fulfill their expectation of addressing their debt in bankruptcy and emerge with their secured debt current. The bankruptcy court retains jurisdiction post-confirmation. . . . The Court and the Chapter 13 Trustee are charged with fully administering a case through completion. Administering a successful Chapter 13 plan requires full disclosure from all participants and requires that plan confirmation is not thwarted by mortgagees who assess unnoticed increases in the borrower's debt

---

[9]  Section 524(i) provides:

The willful failure of a creditor to credit payments received under a plan confirmed under this title, unless the order confirming the plan is revoked, the plan is in default, or the creditor has not received payments required to be made under the plan in the manner required by the plan (including crediting amounts required under the plan) shall constitute a violation of an injunction under subsection (a)(2) if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor.

[10]  The Debtors acknowledge the language of Plan Section (V)(G)(11) requiring notice of interest rate changes is inapplicable because their mortgage provides for a fixed interest rate. *Debtors' Brief*, p. 12.

> believing they can collect from their collateral upon completion of an otherwise successful Chapter 13 plan.

*Payne*, 387 B.R. at 631 (Bankr. D. Kan. 2008) (*citing, inter alia, Sanchez*, 372 B.R. at 302; *Jones*, 366 B.R. at 598).[11] Further, the *Payne* Court noted post-petition fees and defaults could be addressed by a modified Chapter 13 plan, supporting a finding the notification sought by the Plan is reasonable. *Payne*, 387 B.R. at 632. The Court further observed:

> The right to modify a plan post-confirmation and the ability to address post-confirmation debt service increases is lost if lenders are allowed to keep debtors in the dark as to their true post-petition debt obligations. Without knowledge of escalating post-confirmation charges, debtors cannot protect their right to a fresh start after otherwise successfully emerging from Chapter 13.

*Id.*

The Court therefore finds the Plan language requiring notification to the Trustee, the Debtors and the Debtors' attorney of changes in taxes or insurance constitutes a reasonable procedure to aid case administration, and it is permitted. *See Anderson*, 382 B.R. at 504 (citations omitted) ("[A]dditional notice is more in the nature of a procedural requirement to aid Chapter 13 administration, rather than a modification [of the creditor's rights] and is therefore permissible."). However, such a provision must be limited in time until the Chapter 13 discharge is secured. To extend the additional notice requirements beyond that time would move this requirement from aiding case administration to modifying the underlying documentation between the parties.[12]

---

[11] The *Sanchez* Court described the bankruptcy system as having two primary objectives: first, ensuring the equitable and timely repayment of creditors; and second, providing debtors a fresh start when they emerge from bankruptcy. *Sanchez*, 372 B.R. at 296. Citing *Sanchez*, the Bankruptcy Court for the District of Delaware observed:

> When Mortgage Lenders fail to disclose post-confirmation fees and charges to both debtors and the Court, the bankruptcy system cannot achieve the second of these twin goals. In order for debtors to receive a fresh start, both they and the Court must be fully informed of all relevant facts, including post-confirmation fees and charges. Moreover, it is incumbent upon the Court to timely consider and rule upon post-petition fees and charges to ensure that the purposes animating the Code are achieved. If the Court and the Chapter 13 Trustee fully administer a case through completion of a 60-month Chapter 13 plan, only to have the debtor promptly re-file on account of accrued, undisclosed fees and charges on her mortgage, it could fairly be said that we have all been on a fool's errand for five years.

*Watson*, 384 B.R. at 707.

[12] Further, the Court finds the admonition for Chase "otherwise to comply with 11 U.S.C. § 524(i)" to be surplusage which should be excluded, because it merely vaguely instructs Chase to do something it is already mandated to do under the Bankruptcy Code.

**E.     Reserving Post-Petition Wages as Property of the Estate Upon Confirmation**.

Commencement of a case under any chapter of the Bankruptcy Code creates an "Estate." 11 U.S.C. § 541(a). In a Chapter 13 case, property of the Estate includes not only all of the debtor's pre-petition property specified in § 541, but also all of the property acquired by the debtor post-petition, plus his or her post-petition earnings. 11 U.S.C. § 1306(a). Thus, the primary difference between the Estate of a Chapter 13 case and that of a chapter 7 case is the inclusion of the debtor's property, including earnings, acquired after the commencement of the case.

It is not anticipated, however, that all of the debtor's pre- and post-petition property will remain vested in the bankruptcy estate for the entire duration of a Chapter 13 plan.[13] As Judge Elizabeth E. Brown of this Court has noted in *In re Dagen*, 386 B.R. 777, 782 (Bankr. D. Colo. 2008), there is a split of authority regarding the issue of whether post-petition income ceases to be property of the estate upon confirmation, and discussed the following lines of cases. Some cases follow the "estate preservation approach" which holds all property remains property of the estate until discharge, dismissal or conversion. *See Security Bank of Marshalltown v. Neiman*, 1 F.3d 687 (8th Cir. 1993). The "modified estate preservation approach," however, finds the property of the estate as of confirmation revests in the debtor, but the estate continues to exist and is funded by the debtor's payment of regular income and post-petition assets. *See Barbosa v. Soloman*, 235 F.3d 31 (1st Cir. 2000). Another line of authority, representing the "estate transformation approach" contends only property necessary for execution of the plan remains property of the estate after confirmation. *See Black v. United States Postal Service (In re Heath)*, 115 F.3d 521 (7th Cir. 1997). Judge Sidney B. Brooks and former Judge Roland J. Brumbaugh of this Court have adopted this approach, finding "property of the estate consists only of those funds actually paid to the Chapter 13 Trustee." *In re Vitt*, 250 B.R. 711, 718–719 (Bankr. D. Colo. 2000) (*citing In re Thompson*, 142 B.R. 961, 964 (Bankr. D. Colo. 1992) and *In re Root*, 61 B.R. 984, 985 (Bankr. D. Colo. 1986). Lastly, some courts follow the "estate termination approach," which holds the confirmation order terminates the estate, revesting all property of the estate in the debtor. *See Oliver v. Toth (In re Toth)*,193 B.R. 992 (Bankr. N.D. Ga. 1996).[14]

This Court believes the "estate termination approach" is the correct interpretation. But why is this important? Herein, the issue is whether the Debtors may propose a plan in which all their post-petition wages do not revest in them under § 1327(b). Thus, this Court must decide whether to confirm the Plan in this case that proposes to retain more property in the Estate than is reasonable necessary to fulfill its provisions.

A Chapter 13 plan must provide for payment of claims through periodic payments made to the trustee. 11 U.S.C. § 1322(a)(1). While a few plans can be funded from asset sales, *etc*., the

---

[13]   Section 1327(b) provides, "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."

[14]   Judge Brown adopted the estate termination approach. *Dagen*, 386 B.R. at 781.

vast majority of the funding payments are made from a debtor's post-petition wages. Thus, a plan and order of confirmation should provide for the Estate to retain a sufficient portion of the debtor's future earnings and/or other property, to fund the approved obligation. Failure to do so will potentially eliminate the source from which plan payments will be made. After analyzing the creation of a Chapter 13 estate and the configuration and funding of a plan in this fashion, the process as enunciated in §§ 1306 and 1327 works as contemplated. *See In re Jemison*, 2007 WL 2669222 *2 (Bankr. N.D. Ala. 2007); *Am. Gen. Fin., Inc. v. McKnight (In re McKnight)*, 136 B.R. 891, 894 (Bankr.S.D.Ga.1992).

However, the scope of the Estate property should not be over-inclusive. The Bankruptcy Court for the Northern District of Alabama in *Jemison* perhaps said it best:

> The debtor's property and the estate's property are not protected to the same extent by the automatic stay imposed by Section 362(a). The stay under paragraphs (2), (3) and (4) of Section 362(a) applies to the estate's property but not the debtor's property. Consequently, for the most part, the estate's property is protected from both pre- and post-petition creditors, while debtors and their property are only protected from pre-petition claims. This Court is convinced the more extensive protection given to the estate's property is the reason these debtors are attempting to retain all their property, including wages, in the estates for the duration of their cases. If post-petition creditors can reach only debtors individually, but not property and wages that remain vested in the estate, then these creditors have no meaningful remedy while the case is pending unless they first obtain relief from the stay to pursue property of the estate before commencing state law collection remedies. Such a two-step process gives debtors, who leave all their property in the bankruptcy estate, unwarranted stay protection, and it imposes additional collection expenses and delays on postpetition creditors . . . The primary purpose of chapter 13 is to allow a financially distressed consumer-debtor to reorganize and adjust his or her pre-petition debts through a wage-funded payment plan structured within the parameters of chapter 13 of the Code, and after making all plan payments the debtor may receive a discharge of any remaining unsecured consumer debts. Through this same process, debtors may cure defaults in secured debts and save homes and automobiles from foreclosure and repossession, extend payment of priority and non-dischargeable claims (e.g. taxes, domestic support obligations, student loans) over the plan's commitment period, and continue to pay ongoing maintenance installments due on long term debts such as home mortgages.

*Jemison*, at *3.

As noted above, pursuant to § 1327(b) property of the Estate vests in the debtor at confirmation, "[e]xcept as otherwise provided in the plan or the order confirming the plan." Further, § 1322(b)(9) provides a plan may "provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity." These provisions

do not permit an arbitrary delay in the vesting of the Estate's property in the debtor in excess of those amounts needed to fund the Plan. The Estate is not, and should not be, a safe harbor in which debtors may moor their property, including earnings, for protection from post-petition creditors. *Jemison*, at *4.

As a result, this Court cannot and will not confirm a plan in which the Estate holds assets greater than necessary to carry out the provisions of the proposed Plan.

## CONCLUSION

As noted by Courts in this District and throughout the Country, careless (or in some cases, reckless) behavior from some entities in the mortgage industry has resulted in a situation wherein questionable fees and costs have been "tacked" on a debtor's mortgage obligation during the pendency of a Chapter 13 case. While the intent in adding language such as suggested in the present case is admirable, this Court is not the legislature and cannot ignore the fact that many of the proposed provisions run afoul of the dictates of the Code as drafted by Congress. Until the provisions of the Code are amended or unless an agreement on language to be used in a proposed Chapter 13 plan is achieved between all parties in a particular case, great care must be taken to avoid modifying a creditor's secured lien in violation of § 1322(b)(2) and (5).

For the above reasons,

IT IS ORDERED confirmation of the Debtors' Third Amended Plan is denied.

IT IS FURTHER ORDERED the Debtors are granted leave to file an amended plan within 14 days of this Order .

Dated January 9, 2009

BY THE COURT:

Michael E. Romero
U.S. Bankruptcy Judge